Gregory FOMBY, Plaintiff,

v.

CITY OF CALERA, a municipal corporation; Harry Deal, Chief of Police for City of Calera; Officer Robert "Rob" Kiker, a police officer in the City of Calera, Defendants.

Civ. A. No. CV 83–PT–1853–S.

United States District Court, N.D. Alabama, S.D.

Nov. 23, 1983.

As Amended Nov. 29, 1983 and Feb. 21, 1984.

Roy J. Brown, Birmingham, Ala., for plaintiff.

Walter W. Bates, McDaniel, Hall, Parsons, Conerly, Scott & Lusk, P.C., Birmingham, Ala., for defendants.

## MEMORANDUM OPINION

PROPST, District Judge.

This cause comes on to be heard on the Motion to Dismiss filed by the City of Calera (City) on September 14, 1983, which has been treated as a motion for summary judgment by order of this court entered on October 14, 1983.

The complaint was filed more than six months, but less than one year, after the occurrence of the incidents complained of. It generally seeks redress for alleged use of excessive force, illegal arrest, false imprisonment, assault and battery, denial of medical treatment and improper training and supervision. The City is alleged to have a policy and practice "to permit and encourage its police officers to violate the civil rights of the citizens in the manner described herein." No claim was filed with the City within six months of the occurrence of the incidents complained of. The issue is clearly defined. Is this court bound in this case by the decision of the Supreme Court of Alabama in *Stewart, et al. v. City of Northport, Ala.*, 425 So.2d 1119 (Ala.1983), which holds that Ala.Code § 11–47–23 (1975) is the most analogous and applicable statute of limitations which must be applied in actions brought against Alabama municipalities under 42 U.S.C. § 1983?

The Alabama Supreme Court clearly recognized that "It is well established that in a § 1983 action, the courts must look to state law for the applicable statute of limitations.... Since the defendant is a municipality, the applicable Alabama statute of limitations is § 11–47–23, Code 1975. Section 11–47–23 states: 'All claims against the municipality (except bonds and interest coupons and claims for damages) shall be presented to the clerk for payment within two years from the accrual of said claim or shall be barred. Claims for damages growing out of torts shall be presented within six months from the accrual thereof or shall be barred.'" 425 So.2d at 1121.

The Alabama Supreme Court distinguished *Ehlers v. City of Decatur*, 614 F.2d 54 (5th Cir.1980), by noting that, "The *Ehlers* court, however, read the Georgia statute as an exhaustion of remedies requirement, not as a statute of limitations," and stating that, "Alabama's statute is different from the Georgia statute under consideration in *Ehlers*. Section 11–47–23 does not require that an injured party give notice directly to the City before filing suit; rather this section has been construed to allow the filing of suit within the six-month period to be notice to the City." 425 So.2d at 1121.

The *Stewart* court further noted that, unlike the Georgia statute, which requires affirmative action by the municipal body before suit is filed, "Alabama's statute does not require such affirmative action. The only requirement is that suit be filed within the six months allowed by *the statute of limitations*. We are of the opinion that § 11–47–23 does not establish any constitutional barriers, such as the exhaustion of administrative remedies to plaintiffs' filing their § 1983 action. Therefore, *Ehlers* is not controlling in this cause." 425 So.2d at 1121–1122 (emphasis added).

To this judge's knowledge, this issue has been at least partially raised before two other judges of this court.[1] Neither of these judges found it necessary to directly confront the issue.[2] The issue has been directly presented to this court for decision.

The court approaches this subject with the strong feeling that it enters an area where infallibility will result only from finality. The court will thus briefly state

1. *See Acoff v. City of Tuscaloosa, et al.*, CV 82–G–1671–W (N.D.Ala. April 15, 1983) (Judge Guin); *Smith v. City of Gadsden*, CV 82–AR–2698–M, (N.D.Ala. July 11, 1983) (Judge Acker) (unpublished opinions).

2. Judge Guin did state that "For the present the court assumes this is true [that Section 11–47–23 states the most analogous State claim]." However, Judge Guin proceeded to hold that, in any event, the statute should be applied prospectively only and therefore was not applicable to Acoff. For a decision supporting this view, *see*

*Elliott v. Group Medical & Surgical Service*, 714 F.2d 556 (5th Cir.1983). Judge Acker held that the cause of action sued upon did not accrue until a time within the six months prior to the filing of the suit. Both Judge Guin and Judge Acker expressed doubt over whether *Stewart* should be followed. Judge Acker also noted that a special act, applicable only to the City of Birmingham, provides for a ninety-day notice period. *See* Ala.Code, Tit. 62, § 659 (1940); Ala. Code § 1–1–10 (1975).

what it deems to be the applicable principles which lead to its conclusion.

■ The choice of a limitations period for a federal cause of action is itself a question of federal law. *Auto Workers v. Hoosier Corp.*, 383 U.S. 696, 701, 86 S.Ct. 1107, 1110, 16 L.Ed.2d 192 (1966). This court is not bound by any holding of the Alabama Supreme Court in determining what the applicable statute of limitations should be. The court should not apply *Stewart* to this case if to do so would violate federal law.[3]

■ There is no federal statute of limitations expressly applicable to suits brought under the provisions of 42 U.S.C. § 1983. In such cases federal courts "borrow" the most nearly analogous state statute of limitations. *Calhoun v. Alabama Alcoholic Beverage Control Board*, 705 F.2d 422, 424 (11th Cir.1983). The Fifth Circuit has held that the Alabama statutes of limitations most generally applicable to § 1983 cases are § 6–2–34, (six years) for actions sounding in trespass and § 6–2–39 (one year) for actions sounding in trespass on the case.[4] The analogous statute is determined by the "essential nature of the claim." *Beard v. Stephens*, 372 F.2d 685 (5th Cir.1967).[5] In *Beard*, the court stated: "We must first look at both federal and state law to determine whether the borrowed period has run.

We *look first to federal law* to determine the nature of the claim and then to *state court interpretations* of the state's 'statutory catalogue' to see where the claim fits into the state scheme.... The problem is a two step one—first, what *under federal law* is the 'essential nature' of the claim, and second, what statute of limitations *would the state courts* hold applicable to this type of claim." 372 F.2d at 688 (emphasis added).[6] The Court then proceeded to determine that the six year statute applied to a claim against the sheriff and his deputies for "wrongful wounding" of the plaintiff during an arrest and that the one year statute applied to a conspiracy claim and to a dereliction of duty claim.[7]

The *Beard* court declined to follow an approach that all § 1983 actions were actions "not arising from contract, and not specifically enumerated in this section."[8]

The 7th Circuit [has] held the § 1983 and the § 1985 claims, as statutory rights of action, were under the Illinois six-year statutes as "civil action(s) not otherwise provided for."

If we followed that broad approach the claims of appellant all would fall within the Alabama one year statute. Our view is that a procedure which as the first step of the two-step analysis characterizes the claim simply as a "statutory cause

---

**3.** Justice Stevens argued in *Del Costello International Brotherhood of Teamsters v. United Steelworkers of America*, —— U.S. ——, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) that the Rules of Decision Act, 28 U.S.C. § 1652, mandates application of state statutes of limitations whenever Congress has provided none. The majority rejected this contention stating that the Act did not establish a *mandatory* rule that federal courts apply state law in federal interstices. 103 S.Ct. at 2288, n. 13.

**4.** Ala.Code §§ 6–2–34, 6–2–39 (1975).

**5.** For a case which is critical of this "essential nature" test and argues for a uniform statute applicable to all §§ 1981–88 claims *see Sullivan v. LaMunyon*, 572 F.Supp. 753 (D.Kan.1983).

**6.** *See also Johnson v. Railway Express Agency*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). In *Johnson*, the Court stated: "Although state law is our primary guide in this area, it is

not, to be sure, our exclusive guide. As the Court noted in *Auto Workers v. Hoosier Corp.*, 383 U.S. at 706–707, 86 S.Ct. at 1113–14, considerations of state law may be displaced where their application would be inconsistent with the federal policy underlying the cause of action under consideration." 421 U.S. at 465, 95 S.Ct. at 1722.

**7.** It should be noted that the six year statute was applied in the "wrongful wounding" action against the sheriff "on the theory that a deputy acting under color of office is one and the same public officer as (or the alter ego of) the sheriff. *Holland v. Fidelity & Deposit Co. of Maryland, et al.* 225 Ala. 669, 145 So. 131 (1932)" 372 F.2d at 689. It is not necessary for this court to determine whether the same theory is applicable to a municipality for the trespasses of its officers. This action was begun within one year, although not within six months.

**8.** Ala.Code § 6–2–39(5) (1975).

of action" does not meet the requirement of establishing the "essential nature" of the claim.

372 F.2d at 690, n. 7.

The question which is now presented is by what approach does this court determine the essential nature of the claims now before the court? Is the "essential nature" that the claims are against a municipality or is the essential nature that the claims are for the use of excessive force, illegal arrest, false imprisonment, assault and battery, denial of medical treatment and improper training and supervision?[9]

In *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court overruled a previous ruling in *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), and held that local governments were intended to be included among the "persons" to which § 1983 applies. *Monell* held that local governments "like *every other § 1983 'person'* by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." 436 U.S. at 690–691, 98 S.Ct. at 2035–36 (emphasis added).

Neither § 1983 nor *Monell* make a distinction between the procedures applicable to claims against municipalities and any other "person." *Monell* further states that: "Moreover, since municipalities through their official acts could, *equally* with natural persons, create the harms intended to be remedied by [§ 1983] ... there is no reason to suppose that munici-

pal corporations would have been excluded from the *sweep* of [§ 1983]." 436 U.S. at 685–686, 98 S.Ct. at 2033 (emphasis added). *Monell* gives no indication that the fact that a claim is against a municipality affects its "essential nature."

Federal cases which have adopted state statutes of limitation by analogy have focused on the nature of the claim or the cause of action and the type of relief sought, not the nature of the party being sued. *See Beard, supra; Davis v. U.S. Steel Supply Division of U.S. Steel Corp.,* 581 F.2d 335 (3rd Cir.1978); *Braden v. Texas A & M University System,* 636 F.2d 90 (5th Cir.1981); *Miller v. Smith,* 615 F.2d 1037, *rehearing granted* 625 F.2d 43 (5th Cir.1980). This court has not found nor been cited a federal § 1983 case which has adopted a statute of limitations based on the party being sued.

In *Garcia v. University of Kansas,* 702 F.2d 849 (10th Cir.1983), the court said:

"Similarly state statutory periods depend in some instances on the official position of the defendant, thus a stated period for suits against police officers or county commissioners. The *status of the defendants, however, has no relation to the nature of the cause of action under sections 1981 or 1983* ....

The Court in *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295, indicated that such state limitations should be ignored which are "inconsistent with the Federal policy underlying the cause of action." This to us is an indication *that the nature of the cause of action is the fundamental consideration* ....

9. Although this court has found no case which expressly defines "essential nature of the claim," several cases shed light on the meaning of "essential" when used as a legal term of art. In *Flanigan v. Gruggenheim Smelting Co.,* 44 A. 762, 63 N.J.L. 647 (1899), the court stated that when a court examines a body of systematic law in order to determine whether certain characteristics are substantial or merely accidental, language is used according to the subject matter, and in such connection the word "essential" does not import a physical, moral, or mathematical necessity, but rather a scientific fitness and

congruity which has proper regard to inveterate usage, historical development, and the natural development of legal analysis. *See* 44 A. 762; *see also West v. State,* 576 S.W.2d 718, 719, 265 Ark. 52 (1979) ("essential element" of claim is operative fact which under substantive law determines the rights and liabilities of parties); *City of Dayton v. Borchers,* 232 N.E.2d 437, 441, 13 Ohio Misc. 273 (1979) ("essential" refers to that which is required for the continued existence of a thing). It would appear that the "essential nature of a claim" relates to its fundamental and substantive nature.

In *Board of Regents v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440, there is a *reference to the nature of the cause of action, not a description of the defendants,* not how the cause was created, and not the details as to how the rights were violated. In *Tomanio* the reference is to borrowing state limitations "governing an analogous, *cause of action.*"

We thus must compare the basic violation of *the rights of plaintiff as the cause of action* to several Kansas statutes of limitations which are directed to asserted *causes of action.* This must be what the court means in its direction to examine the underlying claim.

702 F.2d at 850 (emphasis added). In *Beard* the analysis was made purely on the basis of whether the claims were actions on the case or actions in trespass. *Beard* states: "Federal policy neither requires nor allows the federal courts to define the nature of the action in one mold for purposes of determining the statutory period and another mold for determining what parties are liable and for what." 372 F.2d at 690.

In *Shaw v. McCorkle,* 537 F.2d 1289 (1976), the Fifth Circuit noted that some courts have streamlined the *Beard* two-step analysis into one step. These courts simply determine what limitation period a state court would apply in an action seeking similar relief. The *Shaw* court found that in most cases both the one-step analysis and the two-step analysis are harmonious because "even the cases using the two-step approach (in which the essential nature of the claim is said to depend on federal law) in fact draw heavily on *state law* in categorizing the claim presented." 537 F.2d at 1292.

Although a strict application of the one-step analysis might allow this court to follow *Stewart* blindly, a closer examination of the one-step/two-step distinction reveals that state law determines only whether the "essential nature" of a claim is categorized as a tort, contract, etc., or some sub-category thereof. *See Braden v. Texas A & M University System,* 636 F.2d 90, 92 (5th Cir.1981). In *Braden,* the court stated "Therefore, the cause of action [under Section 1983] is in essence delictual.

The analogous state law claim for purposes of selecting the state statute of limitations should sound in tort, not contract." 636 F.2d at 92. *Braden* apparently holds that the analogous state statute should always sound in tort. In *Shaw* the court stated, "Had plaintiff brought an action seeking similar relief—similar damages, *similar defendants*—in a Mississippi court, that suit would have had to be an action against a public officer and the surety on his bond. In Mississippi such an action is in contract and is governed by the six year statutory limitation period for written contracts . . . . . . We are bound to apply this same six-year limitation period to plaintiff's civil rights action in federal court." (Emphasis added, footnote not included) 537 F.2d at 1294.

Although there is an apparent inconsistency between the holdings in *Braden* and *Shaw* with reference to the appropriateness of ever applying a state statute of limitations sounding in contract, it is apparent that the primary emphasis in characterizing the claim, whether by state law or federal law, is on the nature of the cause of action, not the parties. This court does not deem *Shaw's* reference to "similar defendants" to be a determinative factor.

A brief analysis of Alabama cases does not indicate any reason consistent with federal policy for distinguishing between § 1983 suits against municipalities and other "persons." In *Parton v. City of Huntsville,* 362 So.2d 898 (Ala.1978), the Supreme Court of Alabama stated: "We are constrained to hold that Alabama's statutory scheme is to create liability *in limited circumstances,* and that the notice requirements of Sections 11–47–23 and –192 are integral parts of that scheme. . . . The *limitations upon this right,* when uniformly and equally applied are constitutional." 362 So.2d at 900–901 (emphasis added). Alabama has held that in the absence of statute, its local governments would be absolutely immune from suit. The abolition of municipal immunity in Alabama in *Jackson v. City of Florence,* 294 Ala. 592, 320 So.2d 68 (1975), was based upon statutory construction. *Eason v. City of Huntsville,* 347 So.2d 1321 (Ala.1977). Under Alabama law, § 11–47–23 is a condition imposed on parties who would otherwise be subject to the defense of immunity. "In short, the Alabama legislature created a *conditional* right to sue in limited circumstances." *Parton, supra,* at 900.

On the other hand, Congress never intended that municipalities have immunity under 42 U.S.C. § 1983. *Monell, supra,* held that they were not absolutely immune. *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), held that they do not even have qualified immunity.

Among the purposes of § 11–47–23 under Alabama law "is to enable the municipality to investigate and determine the merits of the claim and to adjust claims without the expense of litigation if the circumstances warrant." *Parton, supra,* at 901.[10] Notwithstanding the disavowal of *Stewart,* such a purpose would appear to have the indicia of an exhaustion of remedies requirement forbidden by federal law.

■ There is less reason for a municipality to be allowed to investigate a § 1983 claim than a purely state claim. *Monell* holds that municipalities are liable under § 1983 only where the actions alleged to be unconstitutional implement or execute "a policy statement, [custom,] ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. at 690, 98 S.Ct. at 2035. Municipalities cannot be held liable *solely* on a *respondeat superior* theory. 436 U.S. at 691, 98 S.Ct. at 2036. Since a municipality can be held responsible only for injuries which are the direct result of its official policies, there is less reason for allowing it to investigate such claims or to be otherwise distinguished from other "persons."

A number of state cases have held that statutes requiring special notice of tort claims against local government entities are unconstitutional, as being in violation of the equal protection guaranties of the Fourteenth Amendment. *See* 59 A.L.R. 3rd 93. While it is not necessary for this court to undertake such an analysis, the reasons given by Alabama courts for the validity under Alabama law of such notice provisions would not be applicable to § 1983. *See City of Birmingham v. Weston,* 233 Ala. 563, 172 So. 643 (1937); *Parton, supra.*

Although the distinctions discussed in *Stewart* between the Georgia statute in *Ehlers* and the Alabama statute are valid, the *Ehlers* court had no reason to consider whether the Georgia statute would have been applicable had it been construed as a statute of limitations. The mere fact that *Ehlers* is distinguishable does not determine that § 11–47–23 is the applicable statute to be applied.

For a case in which a distinction *is* made between municipal corporations and other "persons," *see City of Newport v. Fact Concerns, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). In *Newport* it was held that municipalities, unlike other "persons," are not subject to the award of punitive damages in § 1983 actions. This holding was the result of a two-part analysis by the court which considered the history and the policy of § 1983. The court concluded that the relevant history did not suggest that Congress intended to abolish the doctrine of municipal immunity from punitive damages. The court further concluded that considerations of public policy did not support exposing a municipality to punitive damages for the conduct of its officials.

It is arguable that the distinctions made in *Owen, supra,* and *Newport, supra,* suggest that the "essential nature" of a claim may be determined by the fact that it is against a municipality. However, the denial of good faith immunity in *Owen* relates to a defensive matter. The denial of punitive damages in *Newport* relates to a measure of damages. Neither relates to the fundamental or substantive nature of the claim. The City has not argued any history or policy underlying § 1983 which would support a distinction with reference to statutes of limitation.

Since the court's decision is to be primarily based on the principles discussed above and not totally on its interpretation of Alabama law, it is not necessary to fully consider the apparent inconsistencies in the discussions and applications of § 11–47–23 and § 11–47–192 in the Alabama cases.

10. Such a purpose would appear to be defeated if the statute can be satisfied by filing suit within six months. In *Hunnicut v. City of Tuscaloosa,* 337 So.2d 346, 350 (Ala.1976), the court said: "This court on several occasions has indicated that the purpose of this section [14–47–192] is to provide a city with notice of

the accident to allow the city to investigate the claim and perhaps make an adjustment *before the bringing of the lawsuit.*" (Emphasis added.) *See also City of Bessemer v. Brantley,* 258 Ala. 675, 681, 65 So.2d 160 (1953).

It appears, under Alabama law, that if the claim is filed with the municipal clerk within

However, the court will allude to this matter because it could have some additional bearing on the consideration of a personal injury case. *Stewart* did not involve a personal injury claim. Other Alabama cases have held that the filing of a sworn claim for *personal injury with the city clerk* is a condition precedent to the filing of a *personal injury suit. See Dixon v. City of Mobile,* 280 Ala. 419, 194 So.2d 825 (1967); *Maise v. City of Gadsden,* 232 Ala. 82, 166 So. 795 (1936); *Grambs v. City of Birmingham,* 202 Ala. 490, 80 So. 874 (1919). It is arguable that *Stewart's* holding is only *dicta* as it relates to personal injury claims.

In *Stewart, supra, Hamilton v. City of Anniston,* 268 Ala. 559, 109 So.2d 728 (1959) is cited for the proposition that: "Section 11–47–23 does not require that an injured party give notice directly to the City before filing suit; rather this section has been construed to allow the filing of suit within the six month period to be notice to the City." 425 So.2d at 1121. *Hamilton* is somewhat confusing on this point because it is premised on whether the issue may be raised by demurrer or must be raised by plea. However, in *Eason, supra,* decided eighteen years after *Hamilton,* the court said: "and the filing of suit within the six-month period following the incident made the basis of the action does not constitute a compliance with the notice provisions of the statute. *Dixon v. City of Mobile,* 280 Ala. 419, 194 So.2d 825 (1967)." 347 So.2d at 1321. *Dixon* cites *Hamilton* and *City of Birmingham v. Weston,* 233 Ala. 563, 172 So. 643 (1937), for the proposition that:

> It is also firmly established by the decisions of this court, as well as elsewhere, that the filing of the statement is not only mandatory but is a condition precedent to the bringing of an action against the municipal corporation for any cause to which they relate. In order to maintain such action, the filing of the claim in substantial compliance with the statute must be averred in the complaint and proved.

280 Ala. at 421, 194 So.2d 825. Confusion has been generated by the Alabama Su-

preme Court's failure to consider whether § 11–47–192 is applicable. *See Browning v. City of Gadsden,* 359 So.2d 361 (1978). While § 11–47–23 only requires the filing of a claim, § 11–47–192 requires the filing of a sworn claim with the city clerk when personal injury is claimed. It is not clear whether *Stewart* would purport to eliminate the requirements of § 11–47–192. Of course, § 11–47–192 would clearly conflict with *Ehlers.*

■ The court concludes that the *essential nature* of a *claim* is determined by considering the *claim* not the *party.* While an argument that it is the "essential nature" of a claim against a municipality that it be based on custom, policy or practice, may not be entirely specious, it loses force by analogy. With regard to ordinary tort claims relying on *respondeat superior,* it would not be reasonably arguable that the essential nature of the claim is that the employee must be acting within the line and scope of his employment. The essential nature of the claim does not vary from party to party. The court notes that in *Beard* the statute of limitations applied to the sheriff was the same as that applied to the deputy. Since the actions sued upon are alleged to have resulted directly from City policy and practice, there is likewise reason to apply the same statute of limitations to the City as to the police officers.

The court ultimately concludes that it cannot follow or apply *Stewart* in this case. Paraphrasing the *Beard* court, "a procedure which as the first step of the two-step analysis characterizes the claim simply as [a claim against a municipality] does not meet the requirement of establishing the 'essential nature of the claim.'" [11]

The court is reluctant, for reasons of comity, to reach the decision it has reached. However, while the decision of the Alabama Supreme Court is entitled to much deference, this court is obligated to determine the applicable federal law anew. The court is bound by *Beard. See Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981).

six months, an action filed in court after six months but within the usual statute of limitation period is not barred. This appears to belie the fact that § 11–47–23 is a statute of limitation. *See Alexander City v. Continental Insurance Co.,* 262 Ala. 515, 518, 80 So.2d 523 (1955). In *City of Birmingham v. Weston,* 233

Ala. 563, 566, 172 So. 643 (1937), the court held that the statute(s) requiring notice of claims against municipalities were *not* statute(s) of limitation.

**11.** The court has not made its decision based on the brevity of the six month period. Six

The appropriate statute of limitations is either § 6–2–34 or § 6–2–39. In either event the action is timely.

## ORDER

In accordance with the Memorandum Opinion entered contemporaneously herewith, defendant City of Calera's Motion to Dismiss filed on September 14, 1983, is hereby DENIED. Defendants are granted fifteen (15) days to answer.

DONE and ORDERED this the 23 day of November, 1983.

See also, D.C., 564 F.Supp. 265; D.C., 93 F.R.D. 875.

month limitation periods have been applied by other courts. *See Hussey v. Sullivan* 651 F.2d 74 (1st Cir.1981); *Manos v. School Committee of Town of Wakefield* 553 F.Supp. 989 (D.Mass. 1983); *Kelly v. City of Philadelphia* 552 F.Supp. 574 (E.D.Pa.1982). However, *see Grattan v. Burnett,* 710 F.2d 160 (4th Cir.), *cert. granted,* —— U.S. ——, 104 S.Ct. 421, 78 L.Ed.2d 357 (1983).